1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
8

9  BONNIE M. BRYSON,                    )
                                        )  No. CV-07-0238-CI
10          Plaintiff,                  )
                                        )  ORDER DENYING PLAINTIFF'S
11  v.                                  )  MOTION FOR SUMMARY JUDGMENT
                                        )  AND DIRECTING ENTRY OF
12  MICHAEL J. ASTRUE,                  )  JUDGMENT FOR DEFENDANT
                                        )
13          Defendant.                  )
                                        )
14  _____)

15

16      Before the court are cross-Motions for Summary Judgment. (Ct.

17  Recs. 13, 16.)   Attorney Maureen J. Rosette represents the

18  Plaintiff.  Special Assistant United States Attorney Terrye Shea

19  represents the Defendant.   The parties have consented to proceed

20  before a magistrate judge.   (Ct. Rec. 7.)   After reviewing the

21  administrative record and briefs filed by the parties, the court

22  **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS**

23  Defendant's Motion for Summary Judgment.

24                              **JURISDICTION**

25      Bonnie Bryson, Plaintiff, protectively filed for a period of

26  disability and disability insurance benefits (DIB) and Supplemental

27  Security Income benefits on September 15, 2005. (Tr. 137.)   She

28  alleged disability due "insomnia, depression, migraines, memory,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 1

weakness, anxiety, . . . mood swings . . . , sinus, allergies and acid reflux," with an alleged onset date of December 1, 2002. (Tr. 95.)    Her application was denied both initially and upon reconsideration. (Tr. 45.)    She timely requested a hearing, which was held on February 14, 2007, before Administrative Law Judge (ALJ) Mary Bennett Reed. (Tr. 51, 445.)    Plaintiff, who was represented by counsel, medical expert Allen D. Bostwick, Ph.D., and vocational expert K. Diane Kramer testified at the hearing.    The ALJ denied Plaintiff's application and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5–7.)    The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   – 2

1                    **SEQUENTIAL EVALUATION**

2        The Social Security Act defines "disability" as the "inability

3   to engage in any substantial gainful activity by reason of any

4   medically determinable physical or mental impairment which can be

5   expected to result in death or which has lasted or can be expected

6   to last for a continuous period of not less than 12 months."   42

7   U.S.C. § 423(d)(1)(A).  The Commissioner is governed by a five-step

8   sequential evaluation process for determining whether a plaintiff is

9   disabled.   20 C.F.R. §§ 404.1520, 416.920, *Bowen v. Yuckert*, 482

10  U.S. 137, 140-42 (1987).  As explained by the court in *Edlund*:

11          In evaluating whether a claimant suffers from a
            disability, an ALJ must apply a five-step sequential
12          inquiry addressing both components of the definition,
            until a question is answered affirmatively or negatively
13          in such a way that an ultimate determination can be made.
            20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
14          claimant bears the burden of proving that [s]he is
            disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
15          1999). This requires the presentation of "complete and
            detailed objective medical reports of h[is] condition from
16          licensed medical professionals." *Id.* (citing 20 C.F.R. §§
            404.1512(a)-(b), 404.1513(d)).
17

18  *Edlund*, 253 F.3d at 1156-1157.

19       The initial burden of proof rests upon the claimant to

20  establish a prima facie case of entitlement to disability benefits.

21  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  This burden

22  is met once a claimant establishes that a physical or mental

23  impairment prevents her from engaging in her previous occupation.

24  In steps one through four, a claimant must demonstrate a severe

25  impairment and an inability to perform past work.   *Erickson v.*

26  *Shalala,* 9 F.3d 813, 816-17 (9th Cir. 1993).  If a claimant meets

27  those requirements, the burden shifts to the Commissioner to

28  demonstrate a claimant can engage in other types of substantial

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 3

gainful work which exist in the national economy. *Id.* at 817 (*citing Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984)). To make this determination, the Commissioner must consider a claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(v). *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287 (1987).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational impairment, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

### STATEMENT OF THE CASE

Detailed facts of the case are set forth in the transcript of proceedings and the ALJ's decision and are briefly summarized here. Plaintiff was 34 years old at the time of the hearing. She was divorced with one child. She had an 11th grade education and a high school equivalency degree. (Tr. 461-62.) Plaintiff testified she lived with her daughter and her mother, who helped her with

shopping, household chores and child care. (Tr. 488, 491-92.) She had past work experience as a home health care aide, a daycare assistant, retail clerk, laborer, hostess, food server, food service worker, clerical worker, receptionist, dry cleaning clerk, and cashier. (Tr. 110-28, 503-08.) Plaintiff testified her numerous jobs over the years did not last long because she moved often. She stated she sometimes worked two part-time jobs, but was not fired from any of her jobs. (Tr. 473.) She testified she could no longer work because of pain in her back and numbness and weakness in her legs and arms. (Tr. 474-75, 487.) She reported she used a walker, a wheelchair and a cane to get around. (Tr. 483-84.) She stated she also had problems with incontinence, fatigue, insomnia, headaches, depression, and stress related panic attacks. (Tr. 493-97.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Reed found Plaintiff had not engaged in substantial gainful activity since the onset of the disability. At step two, she found Plaintiff had severe impairments of morbid obesity (64 inches tall, 254 pounds), depressive disorder and anxiety disorder. At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (Tr. 17.) The ALJ found that Plaintiff was not credible. (Tr. 25-26.) At step four, she found the Plaintiff could perform a wide range of medium level work, considering her obesity and several non-exertional limitations due to her depressive disorder and anxiety disorder. (Tr. 24.) Based

in part on vocational expert testimony, the ALJ determined Plaintiff was able to perform her past relevant work as a home health aide and a day care worker, and concluded Plaintiff had not been under a disability, as defined by the Social Security Act, through the date of the decision.  (Tr. 28-29.)

**ISSUES**

The question presented is whether the ALJ's decision is supported by substantial evidence and is free of legal error. Plaintiff argues that the ALJ erred when she: (1) improperly rejected Plaintiff's subjective symptom complaints; (2) found Plaintiff capable of medium exertion work; (3) improperly rejected the opinions of Plaintiff's examining psychologists regarding psychological limitations; and (4) relied on the testimony of a non-examining medical expert.  (Ct. Rec. 14 at 14-17.)

**DISCUSSION**

**A.   CREDIBILITY**

**1.   Limitations due to Physical Impairments**

Plaintiff argues the ALJ's reasons for rejecting her complaints of weakness, fatigue and pain stemming from her neurological condition were not legally sufficient.  Citing *Byrnes v. Shalala*, 60 F.3d 639 (9th Cir. 1995), Plaintiff contends the ALJ was required to give detailed and specific reasons for rejecting her symptom testimony.  (Ct. Rec. 14-15.)  Defendant responds the ALJ properly found there was no evidence of a medically determinable neurological impairment and the alleged symptoms were properly rejected.  (Tr. 23; Ct. Rec. 17 at 12.)

In *Fair v. Bowen,* 885 F.2d 597, the Ninth Circuit discussed a

claimant's burden of presenting "objective medical evidence establishing an impairment" in disability proceedings:

> This is a threshold requirement that cannot be overlooked. Our pain cases interpret a statute that provides: "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. §423(d)(5)(A) (Supp.V 1987). *See Swenson v. Sullivan,* 876 F.2d 683, 687 & n. 2 (9th Cir. 1989).

*Fair,* 885 F.2d at 601-02.

As stated in the Regulations, because an impairment cannot be established by a claimant's statement of symptoms alone, the lack of evidence indicating anatomical, physiological or psychological abnormalities by "medically acceptable clinical and laboratory diagnostic techniques" precludes a finding that a claimant is unable to perform work due to the alleged symptoms. 20 C.F.R. §§ 404.1508, 416.908.

Here, the record in its entirety supports the ALJ finding that there is no objective evidence of a medically determinable impairment that would cause Plaintiff's physical symptoms of numbness, falling, and weakness, or inability to sleep due to a diagnosed sleep disorder. (Tr. 23-24.) Contrary to her argument, Plaintiff's treating physicians did not conclude that she had multiple sclerosis or a neurological disorder, and Plaintiff does not reference specific evidence that supports her argument that she suffers a neurological impairment. (Ct. Rec. 14 at 14-15.) Rather, she contends that, "[c]learly the doctors believe there is some validity to her complaints or else they would not be

prescribing occupational therapy, physical therapy, neurological evaluations, canes, walkers and wheelchairs." (Ct. Rec. 14 at 14.) However, evidence of a medical provider's efforts to evaluate and treat a claimant is not sufficient to establish an impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). In *Ukolov*, the court held that a claimant's own perception of an impairment, "unaccompanied by a diagnosis or finding of impairment does not and cannot establish the existence of a disability." *Id.* at 1006. A medical opinion sufficient to establish an impairment must include "'symptoms [and a] diagnosis.'" *Id.* (*quoting Social Security Ruling (SSR) 96-4p.*)

Medical records consistently show that Plaintiff's medical providers did not identify a physical impairment, neurological or otherwise, to explain her complaints of weakness, numbness, and unexplained falling down. Plaintiff was initially treated in February 2003, at the Community Health Association of Spokane for insomnia and depression complaints. (Tr. 194.) A sleep study in February 2003, revealed no sleep disorder. (Tr. 165, 224.) The treatment provider, Larry Varns, ARNP, advised she return to work to improve her sleep cycle and give her more daily structure. (Tr. 199, 215.) In November, ARNP Varns refused to sign a work release requested by Plaintiff, and recommended she continue her work classes. (Tr. 217.) In March 2004, her antidepressants were increased and by May 2004, she reported feeling much better. Her provider noted that "function impairment is not considered significant." (Tr. 230.) By July 2004, ARNP reported depression as mild. (Tr. 233.) In September 2005, Plaintiff reported her

antidepressants were working, she was attending school and work study and had no complaints. She inquired about discontinuing her medication. (Tr. 235.) In April 2005, Plaintiff's antidepressants were changed due to increased symptoms. At this time, she also reported problems with falling and instability. (Tr. 246.)

The record indicates Plaintiff transferred her medical care to Family Medicine of Spokane in July 2005, and was referred to neurology specialist William Bender, M.D., in October 2005. (Tr. 360, 368, 299.) Dr. Bender could not identify a "clear organic neurologic cause" for Plaintiff's complaints of pain all over her body, or the giving out of her knees without warning. (Tr. 299.) Clinic notes indicate treating physician Dr. Snyders questioned Plaintiff's effort on physical examination of her extremity strength, and her cooperation in treatment efforts, and observed a "great deal of psychosomatic contribution" to her complaints. (Tr. 374-75.) In March 2006, Dr. Snyders noted there were no objective findings of muscular dystrophy or "other neurological pathology" in her treatment records and referred Plaintiff to neurology specialist Roy Kanter, M.D., for consultation and testing. (Tr. 371-378.) Up to the time of referral to the specialist, neurological exams that could not be "willfully altered," were "minimally abnormal," and laboratory testing and imaging results were within normal limits. Reviewing physician Norman Staley, M.D., concluded there were "no discernible physical findings that would produce" claimant's symptoms. (Tr. 390.)

Dr. Kanter examined Plaintiff in August 2006 and ordered a battery of tests to identify the cause for her continued complaints

1    and her stated need for assistive devices to walk.  Nerve conduction
2    testing, imaging and blood work revealed no abnormalities except
3    mild degenerative changes in her cervical spine.  (Tr. 413.)  As
4    found by the ALJ, Dr. Kanter concluded, after reviewing Plaintiff's
5    entire medical record and test results, that there were no objective
6    neurological findings to explain her symptoms, that tests did not
7    indicate multiple sclerosis, spinal cord disease (which he could not
8    totally rule out at that time); he opined further that muscle or
9    neuromuscular junction disease "should not cause intermittent
10    numbness." (Tr. 406.)  In a follow up visit in February 2007, after
11    further testing, Dr. Kanter definitively ruled out multiple
12    sclerosis, neurological disease, "central nervous system or
13    peripheral nervous system disease." He observed that Plaintiff
14    refused physical therapy and would not discuss psychological causes.
15    He had no further recommendations except psychological counseling.[1]
16    (Tr. 22, 436-38.)

17        Because the record contains no medical evidence to support
18    Plaintiff's assertion that she has a neurological impairment or
19    sleep disorder, and the lack of objective medical evidence precludes
20    a finding of such impairments, the ALJ did not err in her finding
21    that there was no medically determinable exertional impairment[2] to

23        [1] Under the Regulations, more weight is given to a specialist's
24    medical opinion about "medical issues related to his or her area of
25    speciality" than to other medical sources.  20 C.F.R. §§
26    404.1527(d)(5), 416.927(d)(5).

27        [2] In her residual functional capacity findings, the ALJ found
28    Plaintiff was limited to medium level work (as well as light and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 10

explain Plaintiff's subjective physical complaints of numbness, weakness, unexplained pain and falling.    ALJ Reed was not required to reject subjective symptom complaints related to an unestablished diagnosis.  20 C.F.R. §§ 404.1508, 416.908; *SSR* 96-7p (if there is no medically determinable impairment, the symptoms allegedly related thereto cannot be found to affect claimant's ability to perform basic work tasks).  Further, the ALJ was not required to include those symptoms in her sequential evaluation.  *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996).

   **2.  Limitations due to Mental Impairments**

   The ALJ did find, however, that Plaintiff had mental impairments of major depressive disorder and anxiety disorder that, in combination, caused mild to moderate limitations in her ability to work.  (Tr. 24.)  In doing so, she discounted Plaintiff's subjective complaints regarding limitations caused by psychological impairments.   Plaintiff argues she is more limited due to psychological factors than found by the ALJ. (Ct. Rec. 15 at 14.)

   Once there is evidence of a medically determinable impairment likely to cause alleged symptoms, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  When an ALJ finds the claimant's testimony as to the severity of symptoms is

---

sedentary work) due to her obesity.  (Tr. 24; *see also* 20 C.F.R. §§ 404.1567(c), 416.967(c); *SSR* 83-10.)  This finding is supported by the record, as clinical notes from providers reference her obesity, but none of her physicians opined this condition precluded her from working.  (Tr. 228, 258, 368, 369, 406, 423, 438.)

unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002). Further, where medical evidence of an impairment is presented, the lack of objective medical evidence to corroborate severity is only one factor considered by the Commissioner. *Bunnell*, 947 F.3d at 345. In addition to the "ordinary techniques of credibility evaluation," the following factors also may be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id.; see also Thomas*, 278 F.3d at 958.

   In the absence of affirmative evidence of malingering, the ALJ's reasons for rejecting a claimant's subjective complaints must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted).

   Here, the ALJ found that medical evidence established severe psychological impairments that could reasonably be expected to cause some of Plaintiff's subjective symptoms, and made detailed credibility findings pursuant to *SSR* 96-7p. (Tr. 25-26.)

Specifically, the ALJ reasoned Plaintiff's allegations of cognitive difficulties were inconsistent with Plaintiff's ability to attend high school until 11th grade and obtain her high school equivalency degree.  The ALJ specifically found Plaintiff's recent psychological testing results showing average intelligence, good reading skills and a normal working memory were inconsistent with her testimony of cognitive deficits.   Also, she cited Plaintiff's testimony that undermined the severity of her cognitive deficits.  (Tr. 25.)   The ALJ found, contrary to Plaintiff's statement she had trouble understanding things, that she testified she had many jobs with varied duties she was able to perform.  She testified she did not leave these jobs due to comprehension problems. Rather, she moved frequently and was never fired from her jobs.  (Tr. 25, 473.)

Other reasons articulated by the ALJ for rejecting Plaintiff's testimony are supported by evidence found at specific cites to the record: Plaintiff's repeated insistence that she has multiple sclerosis when neurological testing found no such diagnosis; complaints of incontinence with no medical records that she sought specialist treatment; inconsistent reports regarding incontinence; reports from third party treatment providers that Plaintiff should return to work and Plaintiff's contradictory requests for work releases; inconsistencies in her reports of past alcohol use; inconsistent reports of family mental illness; poor effort on testing; no testing results indicating cognitive difficulties, poor work history, inconsistent reports of her abilities to get along with people; refusal to participate in physical therapy and mental health counseling.   (Tr. 26.)  These are clear and convincing

reasons addressing specific claims, and are supported by substantial evidence in the entire record.    The ALJ did not err in her credibility determination.

**B.    EVALUATION OF PSYCHOLOGICAL MEDICAL EVIDENCE**

Plaintiff contends the ALJ failed to give legally sufficient reasons for rejecting medical opinions that she had marked psychological limitations that preclude her from working. (Ct. Rec. 14 at 18.)    Specifically she argues that the opinions of examining psychologists Rosekrans, Everhart, and Pollack and therapist Clark were not rejected with legally sufficient reasons.    She contends that the ALJ's reliance on medical expert testimony was error.    (Ct. Rec. 14 at 16-17.)

In a disability proceeding, a treating or examining physician's opinion is given more weight than that of a reviewing or non-examining physician.    *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan,* 246 F.3d at 1202 (*quoting Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.,* 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).    If a treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.    *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given.    *See Flaten,* 44 F.3d at 1463; *Fair,* 885 F.2d at 605.    To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting

clinical evidence, state his or her interpretation of the evidence, and make findings. *Thomas*, 278 F.3d at 957 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ is responsible for resolving conflicts and ambiguities in the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), and she may use the analysis and opinion of an expert to assist in her adjudication and resolution of conflicting medical testimony. *Andrews,* 53 F.3d at 1041 ( *citing Magallanes*, 881 F.2d at 753). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Magallanes,* 881 F.2d at 752. Courts have upheld an ALJ's decision to reject the opinion of an examining physician based, in part, on the testimony of a non-examining medical advisor where other evidence in the record supports the medical advisor's opinions. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001); *Lester*, 81 F.3d at 831. If supported by substantial evidence, the ALJ's decision must be upheld, even where the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40.

In her evaluation of the medical evidence, the ALJ must set forth specific reasons for the weight given to all acceptable medical source opinions. *Id.* at 1042. If the ALJ rejects a contradicted medical opinion, she must give specific, legitimate reasons for doing so. However, the court does not require a "special incantation" in the rejection of medical opinions. Rather, the reviewing court may draw specific and legitimate inferences from the ALJ's summary of the evidence, interpretation and findings, as long as they are supported by substantial evidence in the record.

1  *Magallanes*, 881 F.2d at 755.  Historically, courts have recognized

2  internal inconsistencies, conflicting medical evidence, the absence

3  of   regular   medical   treatment   during   the   alleged   period   of

4  disability, and the lack of medical support for doctors' reports

5  based   substantially   on   a   claimant's   subjective   complaints   as

6  specific,   legitimate   reasons   for   disregarding   an   examining

7  physician's opinion.  *Thomas,* 278 F.3d at 957; *see also Flaten*, 44

8  F.3d at 1463–64; *Fair*, 885 F.2d at 605.  Further, the more

9  consistent an opinion is with the record as a whole, the more weight

10  is given to that opinion.  20 C.F.R. § 404.1527(d)(4).  The ALJ does

11  not need to accept the opinion of any medical source if it is

12  conclusory, brief or unsupported by findings.  *Matney on Behalf of*

13  *Matney v. Sullivan*,  981 F.2d 1016, 1019 (9th Cir. 1992).

14      As summarized and interpreted by the ALJ, the medical evidence

15  reveals specific and legitimate inferences that support the ALJ's

16  rejection of assessments that Plaintiff had marked psychological

17  limitations that rendered her incapable of any work.  (Tr. 27–28.)

18  In addition, the ALJ made sufficiently specific findings regarding

19  the   individual   psychologists'   findings.   She   noted   that   the

20  evaluations of Drs. Everhart,[3] Pollack and counselor Schoonover did

21  not have the advantage of a longitudinal or complete record to

22  consider in forming their opinions, and it was not evident that Dr.

23  Rosekrans had reviewed any records. (Tr. 27.)  This is a legitimate

24  basis for discounting an examining physician's opinion, as the

25  _____

26      [3]  The ALJ gave some weight to Dr. Everhart's assessments,

27  noting that Dr. Everhart opined Plaintiff would work best with few

28  people.  (Tr. 27, n.6.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 16

record in its entirety must be considered in evaluating disability claims. 20 C.F.R. §§ 404.1519p, 416.919p. Other reasons given for discounting their opinions of marked limitations were: inconsistencies between the doctors' observations and test results within normal limits, concerns regarding impairments that were ruled out by Dr. Kanter; inconsistencies in the record regarding the claimant's self-reported symptoms and tests result; the lack of narrative support in Dr. Pollack's assessment and his moderate global assessment of functioning score and objective testing results. (Tr. 27.) These are legally sufficient reasons amply supported by the record. *Thomas,* 278 F.3d at 957.

While the ALJ considered the objective test scores in Ms. Schoonover's report, which was co-signed by Dr. Rosekrans, she gave little weight to the functional limitations assessed. She also rejected the personality disorder diagnosis.[4] (Tr. 28.) The ALJ

---

[4] Although Dr. Rosekrans formally signed the evaluation form completed by Shannon Schoonover, MS, the record does not contain sufficient evidence to establish that Dr. Rosekrans either examined Plaintiff personally or closely supervised Ms. Schoonover to the extent that he may be considered an examining psychologist. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). Since Ms. Schoonover is not an "acceptable medical source" whose opinion can establish an impairment, 20 C.F.R. 404.1513, 416.913, her opinions regarding the existence of medically determinable impairments are not given weight. If an impairment is established by an acceptable medical source, however, her observations regarding functional limitations caused by that impairment must be considered and may be given

1   explained properly that the significantly low global assessment of
2   functioning assessed by Ms. Schoonover was based on sleep complaints
3   that were subjective and unreliable, and not supported by the formal
4   sleep study conducted which indicated no sleep disorder.  The ALJ
5   also reasoned that the objective memory and intelligence tests
6   (which could not be altered by poor effort) administered by Ms.
7   Schoonover showed normal intelligence and memory and no cognitive
8   deficits.  (*Id.*)  She properly rejected the personality disorder
9   diagnosis as unsupported by the record in its entirety and by Dr.
10  Bostwick's testimony which was supported by the narrative reports
11  and objective testing.  (*Id.*)

12        Regarding the opinions of therapist Becka Clark, from Family
13  Services Spokane, the ALJ adequately explained why the counselor's
14  assessed limitations were rejected, finding that Ms. Clark is not an
15  accepted medical source under the Regulations, so her diagnoses
16  carry no weight.  *SSR* 06-03-p; *see* n.3 *supra*.  The ALJ also found
17  Ms. Clark's assessment was not supported by objective testing or
18  other medical evidence and, as discussed above, Plaintiff's self-
19  report was unreliable. (Tr. 28.)  Finally, the ALJ found Ms. Clark's
20  report that Plaintiff did not participate fully in counseling and
21  was discharged for lack of follow-up undermined the validity of Ms.
22  Clark's assessment. (Tr. 28, 392, 395.)  The ALJ gave specific

23  ——————————————

24  weight, depending on the relevant facts, including her
25  qualifications, how long she has worked with Plaintiff and how
26  consistent her opinions are with other evidence.  Her opinions may
27  be rejected only with "germane" reasons.  *Dodrill v. Shalala*, 12
28  F.3d 915, 919 (9th Cir. 1993); *SSR* 06-03p.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 18

reasons, relevant to Ms. Clark's contact with Plaintiff, for rejecting the marked and severe limitations assessed by Ms. Clark. (Tr. 28, 341.)

In sum, ALJ Reed rejected marked and severe functional limitation assessments relied upon by Plaintiff with specific, legitimate reasons that are supported by the record. She adopted the testimony of Dr. Bostwick, which was supported by the narrative reports of the psychologists and objective testing in the record, after she thoroughly discussed and analyzed the examining psychologists' reports and other medical evidence, and properly factored in Plaintiff's lack of credibility. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

### CONCLUSION

The ALJ's ultimate findings of non-disability are based on substantial evidence from the entire record and free of legal error. Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13)** is **DENIED.**

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 16)** is **GRANTED**.

3.   Judgment for the **DEFENDANT** shall be entered. The District Court Executive is directed to enter this Order, forward copies to counsel, and thereafter shall close this file.

DATED May 5, 2008.


              S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  – 19